UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Adam R. Hageman,

        Plaintiff,                      Court File No. 18-cv-1005 (JNE/LIB)

v.

**REPORT AND RECOMMENDATION**

Morrison County Sheriff's Office, et al.,

        Defendants.

This matter came before the undersigned United States Magistrate Judge pursuant to an Order of referral from the Honorable Joan N. Ericksen, [Docket No. 24], made in accordance with the provisions of 28 U.S.C. § 636(b)(1), and upon Defendants' Motion to Dismiss. [Docket No. 16]. On October 25, 2018, the Court established a briefing schedule for Defendants' Motion to Dismiss. (Briefing Schedule [Docket No. 25]). In accordance with the briefing schedule, on November 6, 2018, the Court took Defendants' Motion under advisement on the parties' written submissions. (Id.).

For the reasons discussed herein, the Court recommends that Defendants' Motion to Dismiss, [Docket No. 16], be **GRANTED**.

## I. BACKGROUND AND STATEMENT OF FACTS

Plaintiff filed his Complaint on April 13, 2018. (Complaint [Docket No. 1]). At the time Plaintiff filed his Complaint, he was incarcerated at Morrison County Jail awaiting his criminal trial. (Ervin Decl., Ex. 3). Generally, Plaintiff brings a claim pursuant to 42 U.S.C. § 1983, alleging that while he was incarcerated at Morrison County Jail, Defendants[1] violated his constitutional

---

[1] Plaintiff names as Defendants Sheriff Shawn Larsen; Jail Administrator Scott MacKissock; Jail Programmer Tim Brummer; Correctional Officer Beth Larsen; Correctional Officer Jenny Orth; Correction Officer Mike Whitlow;

rights under the First and Fourteenth Amendments, as well as, acted negligently. (Id. at 1–2). Specifically, Plaintiff alleges that all Defendants conspired against him to keep his "Catholic Malta Bible" from him in violation of his First Amendment rights. (Id. at 42). Plaintiff also alleges that Defendant Whitlow, Defendant Orth, and Defendant Waltman put him in "lockdown" without due process, violating his rights under Fourteenth Amendment. (Id. at 26–27). Plaintiff also alleges that Defendant Whitlow destroyed a picture of his pregnant fiancé. (Id. at 31). Plaintiff next alleges that jail staff, as well as, Defendant Orth failed to give him a non-reused icepack for his shoulder after another inmate injured him. (Id. at 36–37). Lastly, Plaintiff alleges that Defendant Ochoa committed domestic terrorism after he set Plaintiff's breakfast on top of Plaintiff's toilet. (Id. at 34).

By his Complaint, Plaintiff requests this Court grant him monetary relief. (Compl., [Docket No. 1], at 41).

In May 2018, Plaintiff's criminal case went to trial and he was found guilty on three felony counts for possession of a firearm, assault with a dangerous weapon, and domestic assault. (Ervin Decl., Ex. 4). Following trial, the court released Plaintiff on bond pending a sentencing hearing, which was originally scheduled for June 2018, but later rescheduled to August 15, 2018. (Ervin Decl., Ex. 3). On August 15, 2018, Plaintiff failed to appear at the sentencing hearing and the court subsequently issued a bench warrant for Plaintiff's arrest, which remains outstanding. (See, Ervin Decl., Ex. 7).

On September 26, 2018, Defendants filed their Motion to Dismiss, and the undersigned issued an Order establishing a briefing schedule. (Defs.' Mot. to Dismiss [Docket No. 16]; Briefing

---

Administrative Assistant Darci Okerman; Correctional Officer Andy Waltman; and Correctional Officer Caleb Ochoa (collectively "Defendants"). (Compl [Docket No. 1]). He originally also named the Morrison County Sherriff's Office as a defendant in this case, however, the Court previously dismissed Morrison County Sheriff's Office because county sheriff's departments are not legal entities amenable to suit. (Order [Docket No. 13]).

Schedule [Docket No. 25]). Plaintiff filed his Response to their Motion on October 23, 2018. (Plf.'s Resp. [Docket No. 21]). Defendants filed their Reply on November 5, 2018. (Defs.' Reply [Docket No. 27]). In accordance with the briefing schedule, on November 6, 2018, the Court took Defendants' Motion under advisement on the parties' written submissions. (Id.).

## II. DEFENDANTS' MOTION TO DISMISS. [DOCKET NO. 16].

Defendants move the Court for an Order dismissing Plaintiff's Complaint with prejudice pursuant to the fugitive disentitlement doctrine, and alternatively seek dismissal without prejudice because Plaintiff failed to properly serve his Complaint on Defendants. (Defs.' Mot. to Dismiss [Docket No. 16]). In his Response, Plaintiff did not address any of Defendants' legal arguments. (Plf.'s Resp. [Docket No. 21]).[2] In Defendants' Reply, Defendants state that the bench warrant for Plaintiff's arrest remains outstanding and that they believe he is currently in California. (Defs.' Reply, [Docket No. 27]).

### A. Standard of Review

The fugitive disentitlement doctrine "provides a federal court with a basis for dismissal in select criminal and civil cases." Barnett v. YMCA, Inc., 268 F.3d 614, 617 (8th Cir. 2001).[3] In its

---

[2] In his Response, Plaintiff only states that he "respectfully oppose[s]" Defendants' Motion to Dismiss. (Plf.'s Resp. [Docket No. 21]). He does not, however, provides any grounds on which he opposes Defendants' Motion. (Id. at 2).
[3] The fugitive disentitlement doctrine, codified at 28 U.S.C. § 2466, provides in relevant part:

(a) A judicial officer may disallow a person from using the resources of the courts of the United States in furtherance of a claim in any related civil forfeiture action or a claim in third party proceedings in any related criminal forfeiture action upon a finding that such person—
    (1) after notice or knowledge of the fact that a warrant or process has been issued for his apprehension, in order to avoid criminal prosecution—
        (A) purposely leaves the jurisdiction of the United States;
        (B) declines to enter or reenter the United States to submit to its jurisdiction; or
        (C) otherwise evades jurisdiction of the court in which a criminal case is pending against the person; and
    (2) is not confined or held in custody in any other jurisdiction for commission of criminal conduct in that jurisdiction.

28 U.S.C. § 2466.

classic form, "[t]he fugitive disentitlement doctrine permits a court to dismiss a [criminal] defendant's appeal if he flees while [his] appeal is pending." Martin v. Mukasey, 517 F.3d 1201, 1204 (10th Cir. 2008). "The doctrine has its origin in the criminal context and arises from a court's inherent authority to protect its proceedings and judgments." Martin, 517 F.3d at 1204 (citations omitted). While, the doctrine traditionally applies to a criminal defendant whose right to appeal is forfeited after escaping custody, it has also been applied in the civil context. Perko v. Bowers, 945 F.2d 1038, 1039–40 (8th Cir. 1991).

The doctrine is premised primarily upon a "concern for the enforceability of a court's judgments and a 'disentitlement' theory that construes a defendant's flight during the pendency of his appeal as tantamount to waiver or abandonment." Barnett, 268 F.3d at 617 (quoting Ortega–Rodriguez v. United States, 507 U.S. 234, 240 (1993)); See also, Degen v. United States, 517 U.S. 820, 824 (1996) ("First, so long as the party cannot be found, the judgment on review may be impossible to enforce . . . . Second, we have said an appellant's escape disentitles him to call upon the resources of the Court for determination of his claims." (internal quotation marks omitted)). Application of the fugitive disentitlement doctrine is discretionary. Martin, 517 F.3d at 1206.

When deciding whether to exercise this discretion, relevant factors include (1) the risk of delay or frustration in determining the merits; (2) the danger that a judgment will be unenforceable; (3) the risk of compromising a subsequent criminal prosecution; (4) the indignity visited upon the court; and (5) the need to deter flight from prosecution. Barnett, 268 F.3d at 618 (citing Degen, 517 U.S. at 825, 828). However, a court should exercise discretion in determining whether to dismiss a case based on the circumstances of each individual case. Id. Indeed, "[p]rinciples of deference counsel against using this inherent authority and require its use only as a reasonable response to the problems and concerns that provoke it." Id. The rationales for this doctrine include

the difficulty of enforcement against one not willing to subject himself to the court's authority, the inequity of allowing that "fugitive" to use the resources of the courts only if the outcome is an aid to him, the need to avoid prejudice to the nonfugitive party, and the discouragement of flights from justice. See, Molinaro v. New Jersey, 396 U.S. 365, 366 (1970); See also, Empire Blue Cross and Blue Shield v. Finkelstein, 111 F.3d 278, 280 (2d Cir. 1997).

Additionally, in the civil context, the Eighth Circuit has observed that "[t]he fugitive status must have a connection to the civil action, and the dismissal must animate the concerns underlying the fugitive disentitlement doctrine." Barnett, 268 F.3d at 617.

**B. Analysis**

This Court must first determine whether Plaintiff is a fugitive from justice. "[I]ntent to flee from prosecution or arrest may be inferred from a person's failure to surrender to authorities." In re Assets of Martin, 1 F.3d 1351, 1356 (3d Cir. 1993). The defendant need not leave the jurisdiction, but—while legally outside the jurisdiction—may constructively flee by deciding not to return. Id. Furthermore, courts generally require clear evidence that the person to be sanctioned has fled or is in hiding. See, Bhasin v. Gonzales, 423 F.3d 977 (9th Cir. 2005) (finding that the Board of Immigration Appeals abused discretion by dismissing appeal under fugitive disentitlement doctrine where there was insufficient evidence the appellant had received notice to report for removal). Cf. Antonio–Martinez v. I.N.S., 317 F.3d 1089, 1093 (9th Cir. 2003) (stating that "Antonio–Martinez has been gone for well over two years. By all appearances, he is not coming back"); Parretti v. United States, 143 F.3d 508, 510–11 (1998) (noting that it was undisputed that defendant had fled the country).

In support of their contention that Plaintiff is a fugitive, Defendants submit: (1) an Order of Detention issued by a District Court Judge in Morrison County, Minnesota, on August 9, 2016.

(Ervin Decl., Ex. 1); (2) a copy of an order revoking Plaintiff's bail issued on March 19, 2018 (Ervin Decl., Ex. 3); (3) a copy of a jury verdict form finding Plaintiff guilty on three counts, issued May 24, 2018 (Ervin Decl., Ex. 4)[4]; (4) a copy of a release order for Plaintiff, ordering him released but to appear for a hearing on June 20, 2018 (Ervin Decl., Ex. 5); (5) a copy of a warrant for Plaintiff's arrest issued on August 15, 2018, indicating that Plaintiff failed to appear for sentencing. (Ervin Decl., Ex. 7); (6) a copy of a United States Postal Service receipt showing that Plaintiff mailed a courtesy copy of his Response to the present Motion from Bakersfield, California (Ervin Decl., Ex. 9); and (7) a Morrison County Sheriff's Office Incident Report dated November 2, 2018, stating that Plaintiff's parents told an officer that Plaintiff had left Minnesota. (Ervin Decl., Ex. 10).

There is, therefore, clear evidence in the record before the Court that shows that Plaintiff is a fugitive. Specifically, the outstanding warrant for Plaintiff's arrest, as well as, the receipt showing Plaintiff mailed his Response to the present Motion from California show that Plaintiff continues evading arrest and therefore avoid sentencing on his conviction. (Ervin Decl., Ex. 7; Ervin Decl., Ex. 9). Additionally, in his Response, Plaintiff did not dispute that he was currently a fugitive. (Plf.'s Resp. [Docket No. 21]). Based on these reasons, the Court finds that Plaintiff is a fugitive.

Next, in order for the fugitive disentitlement doctrine to apply here in a civil setting, the Eighth Circuit has held that a court must find that the plaintiff's fugitive status is connected to the pending civil action. See, Barnett, 268 F.3d at 617. In Barnett, while incarcerated, the plaintiff worked for the YMCA but later sued for violations of the Fair Labor Standards Act. Id. He also subsequently became a fugitive after violating his parole. Id. at 616. The Eighth Circuit held that

---

[4] As noted above, Plaintiff was found guilty of possession of a firearm, assault with a dangerous weapon, and domestic assault. (See, Ervin Decl., Ex. 4).

there was no substantial connection between the plaintiff's civil claim against a private third party and his fugitive status, thus the fugitive disentitlement doctrine did not apply. Id. at 617. The present civil case differs from Barnett in that the connection for his civil claims arise directly out of the circumstances and proceedings in his criminal case.

Other courts have adopted a similar requirement as the Eighth Circuit did in Barnett—that fugitive status be connected to the civil action. See, e.g., Magluta v. Samples, 162 F.3d 662, 664 (11th Cir. 1998) (citing Degen, 517 U.S. at 829) ("A district court may not dismiss a civil complaint under the fugitive disentitlement doctrine unless there exists a nexus between the plaintiff's fugitive status and his civil lawsuit and dismissal is necessary to effectuate the concerns underlying the doctrine."). This Court looks to such other courts for analogous cases.

In Daniel v. City of Birmingham, 2015 WL 4138987, at *2 (N.D. Ala. July 9, 2015), for example, the Court dismissed the plaintiff's Section 1983 action pursuant to the fugitive disentitlement doctrine. The plaintiff's Section 1983 claim stemmed from a 2011 arrest. Id. at *1. In 2014, the plaintiff was again arrested but released on bond. Id. at *2. Plaintiff subsequently failed to appear for trial and became a fugitive after the Court revoked his bond. Id. The Court thus found that the plaintiff's criminal case, even though arising from a separate criminal arrest, still "[arose] from the same incident as the claims in this lawsuit." Id. Therefore, the Daniel court concluded that the second prong—that there be a nexus between the plaintiff's fugitive status and his civil lawsuit—was satisfied. Id.

The factual record in the present case shows that Plaintiff's fugitive status stems from his failure to appear for his sentencing hearing on August 15, 2018, regarding his conviction for possession of a firearm, assault with a dangerous weapon, and domestic assault. (See, Ervin Decl., Ex. 7). Unlike in Barnett, supra, and more like in Daniel, supra, the underlying facts of Plaintiff's

7

civil action, have a sufficient and direct nexus with his fugitive status. Here, Plaintiff's fugitive status is a result from the same court proceedings that forms the basis of Plaintiff's civil claims. Specifically, in his civil action Plaintiff alleges that he was subjected to several constitutional violations generally involving proper medical care, religious practices, and destruction of personal property, while he was incarcerated awaiting his criminal felony trial. Additionally, Plaintiff's fugitive status is due to a failure to appear for his sentencing as a result of being found guilty in that same criminal proceeding. Therefore, this present case is indeed more like <u>Daniel</u>, supra, because Plaintiff's fugitive status stems from the same criminal proceeding out of which he brings his current civil claims, the Court finds this to be a sufficient nexus because the underlying facts of the instant litigation are directly related to his current fugitive status.

Lastly, the Court must consider whether it should exercise its discretion and dismiss the case under the fugitive disentitlement doctrine. <u>See</u>, <u>Barnett</u>, 268 F.3d at 618 (providing list of relevant factors).

Although neither the U.S. Supreme Court nor the Eighth Circuit has addressed the application of the fugitive disentitlement doctrine to civil rights claims brought under 42 U.S.C. § 1983, a number of other federal courts have addressed this issue.

In <u>Sarlund v. Anderson</u>, 205 F.3d 973, 974 (7th Cir. 2000), the Seventh Circuit barred an appeal concerning the § 1983 claims of "a fugitive from justice with two arrest warrants outstanding against him." The claims at issue alleged that certain law enforcement officers conspired against the plaintiff to deprive him of his civil rights in retaliation for reporting misconduct of the defendants that the plaintiff allegedly discovered while working as a confidential informant. <u>Id.</u> The Seventh Circuit reasoned that:

> [T]he plaintiff's fugitive status places him entirely beyond judicial control, thus creating a situation severely prejudicial to his adversaries. Since his whereabouts

> are unknown, he cannot be deposed by the defendants or made to pay costs (should he lose) or attorneys' fees (should he lose and his suit be adjudged sanctionably frivolous). There is nothing to prevent him from using the litigation process to harass the defendants with impunity, and no measure that we can think of short of dismissal of his suit that will protect the defendants from such harassment.

Id. at 975. Because the facts in Sarlund were similar to those of the earliest cases recognizing the fugitive disentitlement doctrine—where a convicted defendant became a fugitive pending appeal—the Seventh Circuit held that "the district judge should have invoked the doctrine and dismissed the suit without further ado, rather than put the defendants to the expense of defending on the merits." Id.

The Court finds two other federal district court opinions involving facts similar to this case also persuasive.

In Cordell v. Tilton, 515 F. Supp. 2d 1114, 1117 (S.D. Cal. 2007), the court considered whether to dismiss the § 1983 claims of a plaintiff alleging that his parole supervisors imposed and enforced unconstitutional conditions of parole. The plaintiff in Cordell complained that his parole conditions were unsound because they required him to reside in a different California county than had been his home prior to his incarceration. Id. The plaintiff violated his parole conditions on three occasions by leaving the county where his parole residence was assigned and, ultimately, became a fugitive when he absconded from parole such that a warrant was pending against him during the pendency of his case before the district court. Id. at 1118. The plaintiff in Cordell commenced and participated in the federal civil litigation while admitting that he was a fugitive. Id. at 1120. Under these circumstances, the Cordell court held that "[i]t would be inequitable to allow Plaintiff to litigate his [civil] claims challenging the legality of his parole while he remains a fugitive from the legal system." Id.

The Court in Griffen v. City of New York Correctional Commissioner, 882 F. Supp. 295 (E.D.N.Y.1995), also addressed similar circumstances. There the plaintiff asserted that prison and hospital officials failed to provide prompt and adequate medical treatment in violation of the Eighth Amendment. Id. at 296. The Court addressed whether the case should be dismissed after the plaintiff became a fugitive when he absconded from parole. Id. Applying the fugitive disentitlement doctrine, the court noted:

> Any order of the Court, whether involving discovery, pre-trial motions or the trial itself, would be effectively unenforceable because [the plaintiff] is beyond the control of the court. His unknown whereabouts would doubtlessly frustrate the efforts of appointed pro bono counsel to communicate with his client and represent [the plaintiff's] interests.

Id.

A final example, although a habeas case, is Jenkins v. State of Minnesota, No. 10-cv-271, 2010 WL 3941425, at *1 (D. Minn. Sept. 15, 2010). There, the Court dismissed the petitioner's habeas case (a civil action) pursuant to the fugitive disentitlement doctrine. In Jenkins, the petitioner was convicted of illegal possession of a firearm, incarcerated, and subsequently filed his habeas petition. Id. While his habeas petition was still pending, however, the petitioner escaped from prison and became a fugitive. Id. In dismissing the petitioner's habeas petition, the Court held that "[b]y escaping from prison, [the petitioner has] shown disrespect for the current habeas proceedings, and instead has made it impossible to afford him any relief." Id.

Plaintiff in the present case now before the Court alleges that state officials infringed on his constitutional rights while he was in custody during his state court prosecution, after being found guilty in that prosecution and in order to avoid sentencing, he became a fugitive and is currently evading arrest, and still he is trying to proceed on his related civil § 1983 claims in this federal litigation. Thus, it would be inequitable to allow Plaintiff to litigate his civil claims

challenging the legality of his pretrial incarceration conditions while he remains a fugitive from the legal system. See in accord, Cordell, 515 F. Supp. 2d at 1117.

Ultimately, the present case illustrates the fundamental considerations undergirding the fugitive disentitlement doctrine. That is, Plaintiff's absence calls into question the efficacy of any order or judgment issued by this Court if this civil matter proceeds; it poses a significant risk of delaying or frustrating the Court's consideration of the merits of Plaintiff's claims; and it constitutes an affront to the judicial process. See, Degen, 517 U.S. at 824–25. Accordingly, the undersigned will recommend that the Motion to Dismiss be granted. Furthermore, the dismissal of Plaintiff's Complaint, [Docket No. 1], should be with prejudice.

In Sarlund, the Seventh Circuit stated:

> Degen as we read it shifts the emphasis from considerations of dignity, deterrence, respect, propriety, and symmetry found in a number of earlier cases to the kind of practical considerations that inform the decision whether to dismiss a suit with prejudice as a sanction for mistakes, omissions, or misconduct.

Sarlund, 205 F.3d at 974 (internal citations omitted); See also, Jenkins, 2010 WL 3941425, at *1(dismissing habeas petition with prejudice); Cordell, 515 F. Supp. 2d at 1125 (dismissing case with prejudice); Griffen, 882 F. Supp. 295 (dismissing complaint in its entirety); FDIC v. Pharaon, 178 F.3d 1159 (11th Cir. 1999) (dismissing case with prejudice); Daccarett–Ghia v. Commissioner, 70 F.3d 621, 627–28 (D.C. Cir. 1995) (dismissing case with prejudice). The Court in Sarlund, in dismissing the plaintiff's claim with prejudice also stated that:

> There is nothing to prevent [plaintiff] from using the litigation process to harass the defendants with impunity, and no measure that we can think of short of dismissal of his suit that will protect the defendants from such harassment.

Sarlund, 205 F.3d at 974. The rationale for the fugitive disentitlement doctrine, and thereby dismissing a plaintiff's civil action with prejudice, include the difficulty of enforcing orders or judgments against one not willing to subject themselves to the court's authority, the inequity of

allowing that "fugitive" to use the resources of the courts only if the outcome is an aid to them, the need to avoid prejudice to the nonfugitive party, and the need to discourage flights from justice. Molinaro, 396 U.S. at 366.

The same rationales as in Molinaro apply in the present case. Plaintiff here has refused to submit himself to the authority of the legal system by failing to appear for his state sentencing hearing after being found guilty of three felonies. Additionally, by this civil case arising out of his criminal case proceedings Plaintiff continues to use the resources of the courts in an effort to benefit himself without also subjecting himself to the authority of the courts. Lastly, dismissal with prejudice is warranted as a discouragement to fleeing justice; Plaintiff has now been a fugitive actively avoiding sentencing for over four months, he does not dispute that he is indeed a fugitive, and he has shown no intention of voluntarily terminating his fugitive status.

Further, if the Court dismissed Plaintiff's Complaint without prejudice, then Plaintiff could continue to harass Defendants without subjecting himself to the authority of the courts. See, e.g., Sarlund, 205 F.3d at 974. Thus, like in Sarland, the Court finds that a dismissal of Plaintiff's Complaint with prejudice in this case "will protect [Defendants] from such harassment." Id.

Given that the underlying rationales for the fugitive disentitlement doctrine apply to this case, the Court will recommend that dismissal with prejudice is the proper outcome.

Therefore, the undersigned recommends that Plaintiff's Section 1983 claim be **DISMISSED with prejudice** under the fugitive disentitlement doctrine.[5]

---

[5] Because the undersigned recommends dismissal based upon Plaintiff's fugitive status is appropriate, the Court need not reach the Defendants' alternative basis offered for dismissal—Plaintiff's failure to properly serve Defendants.

### III. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Defendants' Motion to Dismiss, [Docket No. 16], be **GRANTED**, as set forth above;

2. Plaintiff's Complaint, [Docket No. 1], be **DISMISSED with prejudice**.


Dated: December 18, 2018
s/Leo I. Brisbois
The Honorable Leo I. Brisbois
United States Magistrate Judge


**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).